CASTO SOTO, demandante y recurrente, *v.* HOTEL CARIBE HILTON, demandado y recurrido.

*Número:* RE-93-603 *Resuelto:* 17 de octubre de 1994

*Emmalird García García* y *Guillermo Figueroa Prieto*, aboga-
dos de la parte recurrente; *Carmen I. Muñoz Noya, Julio
A. Díaz Valdez* y *Ada Angélica García Medina*, abogados
de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión
del Tribunal.

Comparece ante nos el demandante Casto Soto (en ade-
lante Soto), mediante recurso de revisión, para solicitar
que revoquemos la sentencia dictada por el Tribunal Supe-
rior que desestimó sumariamente su demanda de daños y
perjuicios por despido discriminatorio por razón de edad
incoada al amparo de la Ley Núm. 100 de 30 de junio de
1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.* (en
adelante Ley Núm. 100), y del *Age Discrimination Emplo-
yment Act* (A.D.E.A.), 29 U.S.C. sec. 621 *et seq.* Por consi-
derar que en este caso había controversia sobre hechos
esenciales, revocamos.

## I

El demandante Soto, quien trabajaba como "croupier"
en el casino del Hotel Caribe Hilton (en adelante el Hotel),
fue despedido el 11 de septiembre de 1989. El Hotel alegó
que el empleado había interrumpido el procedimiento de
pago en la mesa de juegos que tenía a su cargo, lo cual
violaba el reglamento del casino. No conforme, Soto acudió
al procedimiento de arbitraje.

El 11 de octubre de 1990 el árbitro emitió su laudo. Con-
cluyó que el despido había sido injustificado, pues el em-
pleado no había incurrido en violación alguna del
reglamento. Determinó que al interrumpir el procedi-
miento de pago, Soto contaba con el permiso de su
supervisor. Por tal razón, el árbitro ordenó la inmediata

reinstalación de Soto y el pago de los salarios y beneficios dejados de recibir. Pendiente la revisión de este laudo ante el Tribunal Superior, Soto presentó el 7 de noviembre de 1991 la presente acción por despido discriminatorio por razón de edad. Alegó, en síntesis, haber sufrido tal discrimen en sus modalidades de trato desigual y de impacto adverso.

Días después de presentada la demanda por discrimen, el Tribunal Superior confirmó el laudo mencionado mediante una sentencia que advino final y firme por no haber sido objeto de revisión. Así las cosas, el Hotel presentó en la acción de discrimen una moción de sentencia sumaria mediante la cual alegó, en síntesis, que el despido obedeció a la violación reiterada de los reglamentos del casino por parte de Soto. Adujo que no estaba controvertido el hecho de que Soto había sido amonestado el 7 de diciembre de 1988 y suspendido temporeramente el 30 de enero de 1989 por incumplir con los procedimientos reglamentarios de manejo de fichas.([1]) Añadió que del laudo de arbitraje se desprendía de forma incontrovertida el hecho de que Soto interrumpió el procedimiento de pago y que fue esta violación al reglamento del Casino la que finalmente motivó el despido. De esta forma, el Hotel negó la existencia de discrimen.([2])

Soto se opuso oportunamente a la moción de sentencia sumaria y alegó que existen hechos esenciales en controversia. Entre ellos, señaló que desde 1988 el Hotel comenzó a sustituir "lo viejo por lo nuevo" con la intención de proyectar una nueva imagen. Alegó que parte de esta práctica incluyó un cambio de administradores a principios

---

([1]) Tal suspensión fue sostenida por la árbitro Verónica Ríos mediante un laudo de 8 de mayo de 1990.

([2]) En apoyo de su moción de sentencia sumaria, el Hotel Caribe Hilton (en adelante el Hotel) presentó los laudos de arbitraje de 8 de mayo y de 11 de octubre de 1990, las cartas enviadas a Soto para informarle sobre sus violaciones al procedimiento reglamentario del casino y una declaración jurada del Sr. Diego Sorroche, quien trabajó como consultor de casino para el Hotel durante el período de 1986 a 1991, en la que explica que Soto fue sustituido por el empleado de mayor antigüedad, de acuerdo con el convenio colectivo.

de 1989 y un patrón de conducta dirigido a eliminar el personal viejo para sustituirlo por jóvenes. Añadió que para lograr este propósito el Hotel comenzó a: (1) disciplinar a los empleados mayores por incidentes que anteriormente no se penalizaban, con la intención de crearles expedientes negativos; (2) reorganizar las áreas de trabajo, y (3) ofrecer programas de retiro temprano. De esta forma, sostuvo que su despido por la interrupción del procedimiento de pago constituyó un mero pretexto del Hotel para discriminar en su contra por razón de edad.[3]

El Hotel presentó una réplica a la oposición, la que contestó Soto con la correspondiente dúplica.[4] Las partes argumentaron oralmente sus posiciones ante el Tribunal Superior el 9 de septiembre de 1993.

El foro de instancia emitió una sentencia mediante la cual desestimó sumariamente la demanda el 1ro de octubre de 1993. En síntesis, concluyó que no existía controversia sobre el hecho de que el despido se debió a la interrupción del procedimiento de pago por parte de Soto, pues esto había quedado adjudicado de forma final y firme en el laudo de arbitraje. Por la misma razón señaló que no se trataba de un pretexto y que el Hotel había cumplido con su obligación de ofrecer una explicación razonable para el despido. Señaló que "[l]a parte demandante no presentó prueba para establecer una genuina controversia de que los hechos alegados por la parte demandada para separarlo de su empleo eran falsos, pretextuales y alegados con el

---

[3] Soto se opuso a la moción de sentencia sumaria. Presentó, entre otros documentos, las listas de personas empleadas por el Hotel entre 1987 y 1990, incluyendo sus fechas de nacimiento, y de personas que se retiraron entre 1988 y 1990; la declaración jurada de Soto en la cual explica que antes sólo se amonestaba a los empleados en situaciones graves que reflejaran deshonestidad y que los supervisores le decían que se quitara los guantes y que estaba ciego; deposiciones de Julio F. Cora Maysonet, Marcos Raúl Bustamante, Rangel Meléndez y de Soto; la demanda presentada en el Tribunal de Distrito Federal para el Distrito de Puerto Rico por otros once (11) ex empleados del Hotel en la que alegan discrimen por edad, y un aviso del Hotel ofreciéndole a sus empleados un programa de retiro temprano para los mayores de sesenta (60) años que hubieran trabajado allí durante diez (10) años o más.

[4] En sendos documentos, las partes reiteraron sus planteamientos anteriores.

único propósito de encubrir un discrimen por razón de edad".

Solicitada y considerada oportunamente la reconsideración de esta sentencia, el tribunal de instancia se reiteró en su posición el 26 de noviembre de 1993.

No conforme, Soto acudió ante nos mediante un recurso de revisión en el que sostiene que erró el tribunal al resolver sumariamente el presente litigio, al aplicar incorrectamente las normas evidenciarias sobre el peso de la prueba en casos de discrimen en el empleo y al no hacer determinaciones sobre todas sus alegaciones de discrimen por razón de edad.

El 25 de febrero de 1994 concedimos al Hotel un término de treinta (30) días para que mostrara causa por la cual no debíamos revocar la sentencia recurrida. El Hotel ha comparecido y no nos convence. Procede resolver según lo intimado. Veamos.

II

■ La Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite a un demandado "presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363 (1994); *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993); *Worldwide Food Dis., Inc. v. Colón et al.*, 133 D.P.R. 827 (1993); *González v. Alicea, Dir. Soc. Asist. Legal*, 132 D.P.R. 638 (1993); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991); *Roig Comm. Bank v. Rosario Cirino*, 126 D.P.R. 613 (1990); *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117

D.P.R. 714 (1986); *Padín v. Rossi,* 100 D.P.R. 259 (1971); *Roth v. Lugo,* 87 D.P.R. 386 (1963).

 Sin embargo, nuestra jurisprudencia ha sido clara en el sentido de que no es aconsejable utilizar el mecanismo procesal de sentencia sumaria en casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial.

> Si bien la Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular, de los que se rigen por las Reglas de Procedimiento, *hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de "affidavits" o deposiciones.* Este caso es típico de una de esas controversias, donde hay elementos subjetivos envueltos, y de intención y propósitos mentales, donde el factor de *credibilidad* juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. (Énfasis suplido y en el original.) *García López v. Méndez García,* 88 D.P.R. 363, 380 (1963).([5])

 Recientemente concluimos que los casos de discrimen por razón de sexo (por hostigamiento sexual) presentados al amparo de la Ley Núm. 100 deben ser "rigurosamente examinados por los tribunales" con "un análisis detenido y cuidadoso de los hechos". De ordinario estos casos contienen elementos subjetivos o de intención y hay que hacer unas determinaciones basadas en la credibilidad de los distintos protagonistas. En *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R. 117, 135 (1990), expresamos:

> Primeramente, la prohibición contra el hostigamiento sexual en el empleo es una cuestión que responde a política pública de raigambre constitucional y debe ser examinada rigurosamente por los tribunales. Así, su fiel adjudicación requiere un análisis *detenido* y *cuidadoso* de los hechos, pues están involucrados

---

([5]) En *García López v. Méndez García,* 88 D.P.R. 363 (1963), se alegó fraude, simulación y engaño para ocultar los bienes de la sociedad de gananciales en un procedimiento previo de divorcio y liquidación.

factores humanos relativos a *actitudes, conductas, móviles, sentimientos y otros, que difícilmente pueden precisarse a menos que se ventilen en un juicio plenario.* Segundo, la evidencia presentada por los codemandados no demostró que los incidentes no ocurrieron o que no fueron motivados única y exclusivamente por razón del sexo de Carmen L. Estamos, pues, ante una controversia mixta de hecho y de derecho. Requiere aclarar en sus méritos si la conducta de Negrón constituyó o no hostigamiento sexual y si alteró intangiblemente los términos y las condiciones del empleo. Finalmente, hay que examinar si más allá de los descuadres iniciales, su repetición luego del traslado —único fundamento para haberle requerido posteriormente la renuncia— ocurrió como consecuencia del referido ambiente. Estas interrogantes no podían ser adjudicadas sumariamente. Procede remitirlas a una vista evidenciaria para su depuración. (Énfasis suplido y escolio omitido.)

■ Las razones anteriormente descritas para no favorecer la adjudicación sumaria en casos de discrimen por razón de sexo sin un análisis exhaustivo de los documentos presentados son igualmente aplicables a las acciones por discrimen por edad. Por ende, procede que extendamos esta normativa a las acciones incoadas al amparo de la Ley Núm. 100 por discrimen por edad.

■ En el caso de autos, Soto presentó su demanda de discrimen al amparo de A.D.E.A. y de la Ley Núm. 100. Ambos estatutos, que fueron ampliamente discutidos en *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 46–54 (1983), establecen unas causas de acción a favor de las personas que sufren discrimen en el empleo por razón de su edad. Sin embargo, difieren en cuanto al peso de la prueba que imponen al patrono y al empleado.

■ La Ley Núm. 100,[6] que prohíbe el discrimen en

---

[6] La Ley Núm. 100 de 30 de junio de 1959, según enmendada, dispone en su Art. 1, en lo pertinente, lo siguiente:

"Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su *status* como empleado, por razón de edad, según ésta se define más adelante, raza, color, sexo,

el empleo por razón de edad, raza, color, sexo, origen social o nacional, condición social e ideas políticas o religiosas, establece en su Art. 3 una presunción de discrimen cuando el despido no es por justa causa:

Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fueron cometidos en violación de las secs. 146 a 151 de este título, cuando los mismos hayan sido realizados sin justa causa. Esta presunción será de carácter controvertible. 29 L.P.R.A. sec. 148.

En *Báez García v. Cooper Labs., Inc.*, 120 D.P.R. 145, 155 (1987), acogimos como punto de referencia para determinar el significado de "justa causa" las disposiciones de la Ley de Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a–185m).([7])

---

origen social o nacional, condición social, ideas políticas o religiosas del empleado o solicitante de empleo:

"(a) Incurrirá en responsabilidad civil

"(1) por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;

"(2) o por una suma no menor de cien (100) dólares ni mayor de mil (1,000) dólares, a discreción del tribunal, si no se pudieren determinar daños pecuniarios;

"(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de cien (100) dólares, y

"(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares, o cárcel por un término no menor de treinta (30) días ni mayor de noventa (90) días, o ambas penas, a discreción del tribunal.

"El tribunal en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones podrá ordenar al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate." (Énfasis en el original.) 29 L.P.R.A. sec. 146.

([7]) El Art. 2 de la Ley de Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b) dispone:

"Se entenderá por justa causa para el despido de un empleado de un establecimiento:

"(a) Que el obrero siga un patrón de conducta impropia o desordenada.

"(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

"(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

■ Activada la presunción de discrimen, de acuerdo con lo dispuesto en la Regla 14 de Evidencia de 1979,[8] se transfiere al demandado el peso de persuadir al juzgador de que el despido no fue discriminatorio. Es decir, corresponde al patrono demostrar con preponderancia de la prueba que no discriminó. *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 502 (1985); *Ibáñez v. Molinos de P.R., Inc.*, supra, págs. 51–52; *Rodríguez Meléndez v. Sup. Amigo, Inc.*, supra.

■ Este esquema contrasta con el impuesto por A.D.E.A.,[9] que requiere que el empleado pruebe que el

---

"(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

"(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

"No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. Tampoco se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una suma igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo."

[8] La Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV, dispone lo siguiente:

"En una acción civil, una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo de la determinación de la no existencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido."

[9] La sec. 4 de A.D.E.A., 29 U.S.C. sec. 623, dispone, en lo pertinente, lo siguiente:

"(a) Employer practices

"It shall be unlawful for an employer—

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals age; or

patrono lo trató desfavorablemente por razón de su edad, por lo que es indispensable establecer la existencia de intención discriminatoria. Ante la dificultad inherente de probar este elemento, el Tribunal Supremo federal desarrolló un estándar de prueba especial en *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), y en *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), que impone al demandante el deber inicial de establecer un caso prima facie de discrimen probando que: (1) pertenece a la clase protegida por el estatuto, esto es, cuenta con más de cuarenta (40) años de edad; (2) está cualificado para ejercer las funciones del empleo; (3) a pesar de su capacidad, fue despedido, y (4) fue sustituido por una persona más joven. Al probar estos elementos se establece una especie de presunción de discrimen, por la cual el demandado queda en la obligación de ofrecer una explicación razonable no discriminatoria. *Ibáñez v. Molinos de P.R., Inc.*, supra, pág. 50.[10]

Una vez el demandado ofrece la justificación razonable,

> ... debe dársele oportunidad al demandante de demostrar, mediante preponderancia de la prueba, que el motivo aducido constituye un mero pretexto y en realidad ha habido discrimen. Esto se puede hacer, entre otras formas, mediante evidencia circunstancial o estadística de otros individuos en la misma situación del demandante que, o bien se les ha discriminado por la misma razón, o bien han sido retenidos precisamente porque no pertenecen al mismo grupo minoritario. *Ibáñez v. Molinos de P.R., Inc.*, supra, pág. 49.[11]

---

"(3) to reduce the wage rate of any employee in order to comply with this chapter...."

Esta protección es aplicable a empleados mayores de cuarenta (40) años. 29 L.P.R.A. sec. 631, según enmendada en 1986.

[10] No tiene que convencer al juzgador de que ésta fue la verdadera causa. Tampoco es necesario que la explicación ofrecida constituya justa causa, pues se requiere meramente que ésta pueda sostener la conclusión de que el motivo determinante no fue discriminatorio.

[11] El demandante puede probar pretexto de dos (2) formas: directamente, persuadiendo al juzgador de los hechos de que lo más probable hubo motivo discriminatorio, o indirectamente, demostrando que la explicación ofrecida por el patrono no es creíble. J.E. Cuellar, *The Age Discrimination in Employment Act: Handling the Ele-*

A pesar de las diferencias discutidas anteriormente entre la Ley Núm. 100 y A.D.E.A., ambos estatutos presentan prácticamente las mismas controversias esenciales de hecho. Estas son, si existió o no un despido o acción perjudicial al empleado por parte del patrono causada por un motivo discriminatorio. En ambos casos, es inevitable la necesidad de establecer la intención del patrono por lo que el factor credibilidad juega un papel importantísimo en el resultado de la reclamación. Estos elementos generalmente no se pueden definir con certeza hasta que el juzgador de los hechos tenga la oportunidad de ver a los testigos en el juicio.

Lo anterior cobra mayor importancia cuando se trata de una reclamación de tan alto interés público como lo es el discrimen en el empleo. El uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria.

Por ende, en un caso de discrimen en el empleo por razón de edad presentado al amparo de A.D.E.A. o de la Ley Núm. 100, no se favorecerá una moción de sentencia sumaria cuando del estudio detenido de los escritos resulte que existe una controversia sobre hechos esenciales. En el caso de autos, esto es así en relación con la intención discriminatoria del patrono, ya que se controvirtió la explicación ofrecida por él para justificar el despido. La prueba documental presentada por el demandante tendió a demostrar que las actuaciones del patrono constituyeron un mero pretexto para discriminar.

---

*ment of Intent in Summary Judgment Motions*, 38 (Núm. 22) Emory L.J. 523, 532 (1989).

## III

Un análisis de los documentos sometidos en el caso de autos revela que no hay controversia en cuanto a que (1) Soto es mayor de 40 años; (2) estaba capacitado para efectuar su labor; (3) fue despedido sin justa causa, y finalmente, (4) que fue sustituido por un empleado más joven. Por ende, se estableció fuera de toda duda el caso prima facie y la presunción de discrimen requeridos tanto por A.D.E.A. como por la Ley Núm. 100.

Por otro lado, el Hotel justificó su acción de despido por las violaciones repetidas del reglamento por parte de Soto. No hay controversia en el sentido de que el Hotel amonestó a Soto durante diciembre de 1988 y lo suspendió temporeramente en enero de 1989 por violar el procedimiento reglamentario de manejo de fichas. Además, el laudo de arbitraje de 11 de octubre de 1990 concluyó que Soto interrumpió el procedimiento de pago y que casi paga dos (2) veces a un mismo jugador.

Sin embargo, existen controversias de hecho que inciden en aspectos medulares del presente caso, como, por ejemplo, si las actuaciones del patrono tuvieron una adecuada justificación o, por el contrario, si eran un mero pretexto para discriminar. La realidad de esta situación debe dilucidarse en una vista en los méritos.

El laudo de arbitraje emitido en relación con el despido que nos ocupa concluye que aunque Soto interrumpió el procedimiento de pago, lo hizo contando con el consentimiento de su supervisor. Por ende, el árbitro concluyó que el despido estuvo injustificado.

Por otro lado, en lo referente a la explicación ofrecida por el Hotel para el despido, el árbitro añadió lo siguiente:

Mal puede reclamar entonces la Compañía, el cumplimiento estricto de un procedimiento cuando ella misma consiente a través de su personal gerencial la interrupción del mismo per-

mitiendo que el empleado concernido se distraiga con las intervenciones inoportunas de sus clientes. Ello es lo que al fin de cuentas produce la no observancia estricta del procedimiento.

Nos preguntamos entonces, ¿cuál hubiese sido la posición de la Compañía si el Querellante no hubiera hecho el alto en el proceso de pago que se encontraba efectuando para atender los reclamos, al unísono, que los clientes le comunicaban en ese instante.

Probablemente, como muy bien sugiere Casto Soto en su declaración; se hubiese considerado el formularle cargos por trato descortés al cliente. Validar entonces la posición de la Compañía, en ese sentido, equivaldría a substraerse de la realidad de la dinámica que se manifiesta en una mesa de juego. Apéndice F de la Solicitud de revisión, pág. 50.

Según lo anterior, existe la posibilidad de que de todas formas se hubiera disciplinado a Soto. Contrario a lo alegado por el Hotel, lejos de excluir toda posibilidad de motivo discriminatorio, el laudo deja abierta la puerta para establecer la controversia sobre su existencia.

Es precisamente eso lo que Soto logró al presentar los documentos, las declaraciones juradas y las deposiciones en apoyo de su contención de que existía una intención discriminatoria, y que la explicación ofrecida por el patrono no merecía credibilidad. Soto presentó prueba en el sentido de que anteriormente no se amonestaba a los empleados a menos que incurrieran en faltas graves que involucraran deshonestidad y que en los dieciséis (16) años previos al cambio de administración del Hotel no se le había amonestado. Presentó, además, unas situaciones similares de otros ex empleados del Hotel que tenían el mismo perfil de edad y expediente disciplinario que él. De esta forma, Soto apoyó su contención de que la nueva administración del Hotel pretendió crear expedientes negativos a los empleados de mayor edad para facilitar sus despidos. Negada esta práctica por el Hotel, se estableció una controversia de hecho medular a la determinación de existencia de pretexto que debió dilucidarse en juicio plenario.

Por otro lado, se generó una profunda controversia entre las partes sobre el verdadero propósito que perseguía el

Hotel al ofrecer un plan de retiro especial. El Hotel presentó prueba de que el mencionado plan se ofreció a los empleados de mayor antigüedad para premïarles por su labor y para reducir los gastos de nómina.[12] Sin embargo, se impuso como uno de los criterios de elegibilidad el que el empleado contara con más de sesenta (60) años de edad, a pesar de que había empleados de menor edad que llevaban más años en la empresa y, por ende, resultaban más costosos al patrono.

Soto logró controvertir la explicación ofrecida por el Hotel para despedirlo. Presentó las listas de personas empleadas por el Hotel durante 1989 y 1990; llamó la atención al hecho de que aproximadamente un ocheta y cinco (85) por ciento de las personas empleadas durante ese período contaban con menos de cuarenta (40) años, y apuntó al hecho de que esta tendencia es aún más notoria en cuanto a los "croupiers", pues el cien (100) por ciento de los contratados durante el mencionado período eran menores de cuarenta (40) años, y de éstos sólo el diez (10) por ciento contaba con más de treinta (30) años.

Por todo lo anterior, concluimos que Soto logró establecer controversia sobre la existencia o no de una intención discriminatoria y de si las actuaciones del patrono constituyeron un mero pretexto para encubrir el discrimen.[13]

---

[12] Según se explicó, a mayor antigüedad, mayor sueldo y beneficios recibe el empleado.

[13] En vista de la conclusión a la que hemos llegado, es innecesario evaluar en esta etapa si procedía o no que el tribunal a quo adjudicara la reclamación de Soto por discrimen en su modalidad de impacto adverso. Sin embargo, surge claramente de los documentos presentados ante nos que no se configuraron las alegaciones necesarias para tal reclamación. Veamos.

Las reclamaciones de impacto adverso impugnan las políticas de empleo aparentemente neutrales, pero que dañan particularmente a un grupo minoritario. En estos casos no es necesario probar la intención discriminatoria. *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

Sin embargo, Soto señaló como reclamación de impacto adverso los párrafos cuarto, quinto y sexto de la demanda, que expresaban lo siguiente:

"4. Que durante los años comprendidos entre el 1989 y principios de 1991, la parte demandada ha realizado múltiples despidos de empleados con mucha antigüedad en el hotel, teniendo dicha práctica un impacto adverso en las personas de más de 40 años.

Por ende, *procede revocar la sentencia recurrida y devolverle el caso al Tribunal Superior para que continúe con los procedimientos de forma compatible con los pronunciamientos de esta opinión.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Negrón García no intervino.

---

"5. Que el patrón de conducta de la parte demandada en los despidos llevados a cabo en los últimos dos años y medio ha sido exponer diversas razones, tales como indisciplina, conducta incorrecta, reorganización y razones económicas entre otras, como pretexto para justificar los despidos de personas mayores de 40 años y de más de 10 años de antigüedad en el hotel demandado.

"6. Que durante el período señalado la parte demandada ha continuado reclutando personal." Apéndice E de la Solicitud de revisión, pág. 18.

De lo anterior y de los demás documentos presentados con el recurso surge claramente que no se ha alegado adecuadamente la existencia de una práctica neutral cuyo efecto sea discriminatorio. Más bien, la parte demandante se ha limitado a señalar un patrón de conducta tendente a demostrar la existencia de trato desigual por razón de edad.

Por ende, no es necesario evaluar si la modalidad de impacto adverso aplica o no a las acciones de discrimen por razón de edad, lo cual está controvertido en la jurisdicción norteamericana.