JUAN ANTONIO GARCÍA, COMISIONADO DE SEGUROS DE PUERTO RICO, ETC., demandantes y recurrentes, *v.* RAFAEL LEBRÓN ROMÁN y OTROS, demandados y recurridos.

*Número:* RE-94-255      *Resuelto:* 24 de mayo de 1995

534

*Nelson Robles Díaz*, abogado de los recurrentes; *Daniel Cacho Serrano*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Rafael Lebrón Román ocupaba el puesto de Vicepresidente de Suscripción en la Corporación Insular de Seguros

(en adelante Corporación Insular). Como a otros ejecutivos, se le remuneraba con un salario mensual y un bono computado en virtud de sus ejecutorias profesionales sobre las metas trazadas por la empresa.(¹)

El 17 de enero de 1992 la Corporación Insular le *adelantó* veintidós mil dólares ($22,000) mediante cheque emitido a favor de Doral Mortgage Corp. *Según memorando confidencial* suscrito por Ricardo J. Charaf, Vicepresidente Ejecutivo, de 17 de julio de 1992,(²) la cuantía fue considerada por ambos como un *préstamo*. Lebrón Román utilizó este dinero como "pronto" para adquirir una residencia. Los demás ejecutivos de la Corporación Insular recibieron sus bonos en abril de ese mismo año.

El 21 de diciembre de 1992 la Corporación Insular fue declarada insolvente en el Caso Núm. KAC 92-1745(902), *Ralph J. Rexach Chandri v. Corporación Insular de Seguros*. Se emitió una orden provisional de liquidación, posteriormente reafirmada el 4 de enero de 1993, *pero cuyos efectos se retrotrajeron al 21 de diciembre de 1992*. Se nombró liquidador al Comisionado de Seguros.

El 12 de agosto de 1993 dicho funcionario demandó a Lebrón Román al alegar que en el negocio de 17 de enero de 1992 se benefició de la Corporación Insular en un momento cuando la situación era precaria, al punto que poco después fue declarada insolvente. Señaló, además, que Lebrón Román había recibido en la distribución *más que* los

---

(¹) "El Plan de Incentivos para ejecutivos, conocid[o] también como bono de producción, se pagaba usando como base las aportaciones que cada Ejecutivo hacía encaminadas al cumplimiento de las metas trazadas en las reuniones de [p]lanificación estratégicas. El cumplimiento de tales metas hacía acreedor al Ejecutivo a recibir el bono anual. Tanto el demandado como otros Ejecutivos recibieron bonos en años anteriores por razón de haber cumplido con tales metas. Este arreglo era parte de la compensación del co-demandado." Sentencia de 15 de febrero de 1994, págs. 1–2.

(²) En su memorando, Charaf le afirmó que "el *préstamo* de $22,000.00 será saldado a través del bono anual de producción de 1991, el cual no se te entregará. Por lo tanto, se considerará el cheque que fue pagadero a Doral Mortgage sustituto del bono que te correspondía". (Énfasis suplido.) Carta de 17 de julio de 1992, pág. 1.

de su misma clase y, en la alternativa, que la transferencia efectuada carecía de justa causa y debía ser anulada.

El 17 de octubre de 1993 Lebrón Román contestó. En síntesis, expuso que el préstamo alegado era el bono de incentivo para ejecutivos que se pagaba al finalizar cada año, del cual era acreedor y hubo justa causa para su pago. Adujo que no se estableció ninguno de los elementos que ordinariamente se reconocen cuando se constituye un préstamo. Como defensas especiales invocó prescripción, justa causa, reconocimiento de deuda por la Corporación Insular en virtud de sus arreglos de compensación, ausencia de intención real de obstaculizar, demorar o defraudar acreedores de entonces o futuros, y que la acción judicial era arbitraria y discriminatoria, pues no se había instado una similar contra otros ejecutivos o empleados que también habían recibido compensación.

El 15 de febrero de 1994 el tribunal desestimó *sumariamente.* Concluyó que hubo justa causa, pues el demandado Lebrón Román tenía derecho a esa compensación, nacida antes del año previo a la liquidación, ya que para noviembre había cumplido con la meta anual establecida. Determinó que había transcurrido el término para anular la preferencia. Ordenó la devolución del cheque expedido a favor de Lebrón Román, embargado a petición del Comisionado de Seguros para asegurar la sentencia.

Ese mismo día el Comisionado de Seguros presentó una oposición a la moción de sentencia sumaria y expuso razones para justificar su tardanza en presentarla. En reconsideración, el 22 de abril de 1994 el ilustrado tribunal se reafirmó.

No conforme, acudió ante nos el Comisionado de Seguros en revisión.[3]

---

[3] Como único error señaló:

"Erró el Honorable Tribunal Superior al declarar con lugar la Moción de Sentencia Sumaria radicada por los codemandados-recurridos, al interpretar errónea-

## II

■ El Art. 40.230 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4023, define, en lo pertinente, *transferencias fraudulentas* como las efectuadas sin *justa causa* "o con la intención real de obstaculizar, demorar o *defraudar a los acreedores de entonces o a futuros acreedores*". (Énfasis suplido.)

■ Por su parte, el Art. 40.250 (26 L.P.R.A. sec. 4025),[4] analiza propiamente una *preferencia* como una "transferencia de una propiedad de un asegurador a, o para beneficio de un acreedor, por o a cuenta de una deuda antecedente consumada o aceptada por el asegurador dentro de un año antes de la radicación de una petición exitosa de liquidación con arreglo a este Capítulo cuyo efecto puede ser permitir al acreedor obtener un porcentaje mayor de esta deuda que el que hubiera recibido otro acreedor de la misma clase".

Su lectura revela requisitos *distintos* para una anulación. Según lo expuesto, la "transferencia fraudulenta" requiere la ausencia de justa causa o intención real de obstaculizar, demorar o defraudar a futuros acreedores.

■ Sin embargo, para anular una "preferencia" tiene que materializarse al menos una (1) de las cuatro (4) situaciones siguientes:

---

mente los Artículos 40.230 y 40.250 del Código de Seguros[,] 26 L.P.R.A. [s]ecs. 4023 y 4025." Solicitud de revisión, pág. 4.

[4] 40.250 PREFERENCIAS Y GRAVÁMENES ANULABLES

"Este Artículo es similar a las secciones 60 y 67 del Código de Quiebras Federal. Se establecen los fundamentos para que el Liquidador pueda declarar anulable una transferencia. Se salvaguardan a su vez los derechos de los acreedores bajo ciertas circunstancias y se dispone que el tribunal tendrá jurisdicción primaria en todo procedimiento del Liquidador para celebrar vistas y determinar los derechos de las partes.

"Finalmente, impone responsabilidad personal a toda persona que, teniendo motivo para creer que el asegurador estaba insolvente, participa en la concesión de una transferencia a nombre del asegurador." Informe Conjunto de la Cámara de Representantes sobre el P. de la S. 277 y 589 de 4 de junio de 1991, 11ma Asamblea Legislativa, 5ta Sesión Ordinaria, pág. 44.

(1) El asegurador estaba insolvente al momento de la transferencia, o

(2) la transferencia se efectuó dentro de cuatro (4) meses antes de la radicación de la petición, o

(3) el acreedor que la recibió o que habría de beneficiarse de la misma o su agente en la transacción tenían, al momento de efectuarse la transacción, suficiente razón para creer que el asegurador estaba insolvente o estaba a punto de quedar insolvente, o

(4) el acreedor que la recibió era un funcionario, *empleado o abogado u otra persona que de hecho estaba en una posición de influencia en el asegurador comparable a la de un funcionario*, independientemente que ocupara o no tal posición, o un accionista que tuviera directa o indirectamente más de cinco (5) por ciento de cualquier clase de acciones emitidas por el asegurador o cualquier otra persona, firma, corporación, sociedad o conjunto de personas con quienes el asegurador trataba a distancia. (Énfasis suplido.) Art. 40.250 del Código de Seguros, *supra.*

## III

En vista de este sucinto marco estatutario, concluimos que el ilustrado tribunal sentenciador erró al desestimar la demanda. Adviértase que mezcló la dinámica operacional de los dos (2) artículos antes transcritos. Nos explicamos.

El Art. 40.250 del Código de Seguros de Puerto Rico, *supra,* supone una transferencia a beneficio de un acreedor, a cuenta de una deuda antecedente consumada o aceptada por el asegurador dentro de un (1) año, anterior a la presentación de una petición exitosa de liquidación; requisito aquí presente, según discutido. No cabe duda de que la transferencia a Lebrón Román fue para su beneficio y en atención a una deuda antecedente, consumada o aceptada el 17 de junio de 1992.

Notamos, además, que el referido Art. 40.250 varía al término de un (1) año, si el asegurador está sujeto a una orden de rehabilitación. La preferencia tiene que ser una transferencia cuyo efecto sea permitir al acreedor obtener

un porcentaje mayor de la deuda que hubiera recibido otro acreedor de la misma *clase.*

■ Al remitirnos al Art. 40.390 del Código de Seguros, 26 L.P.R.A. sec. 4039,([5]) vemos que se logró el efecto visualizado; esto es, se violó el orden de prioridades en la distribución de reclamaciones del caudal del asegurador.

■ ¿Puede ser anulada por el liquidador? Veamos los cuatro (4) supuestos. El *primero*, que el asegurador estuviera insolvente al momento de la transferencia. No hay prueba que establezca la insolvencia([6]) de la Corporación Insular para el 17 de enero de 1992, fecha de la transferencia. Sin embargo, es menester acentuar que *hay un claro indicador de que estaba a punto de quedar*

---

([5]) En lo pertinente, dispone:

"La prioridad en la *distribución de reclamaciones* del caudal del asegurador estará de acuerdo con el orden en que cada clase de reclamación se establece en esta sección. Toda reclamación en cada una de las clases se pagará en su totalidad o se retendrán fondos suficientes para su pago antes de que los miembros de la próxima clase reciban algún pago. No se establecerán subclases dentro de ninguna clase. El orden de distribución de las reclamaciones será:

"(1) *Clase 1.*—Los costos y gastos de administración del liquidador y los gastos razonables de una asociación de garantía o una asociación de garantía extranjera en el manejo de reclamaciones.

"(2) *Clase 2.*—Deudas vencidas con empleados por concepto de servicios prestados hasta *un máximo de mil (1,000) dólares* y que representen pagos por servicios rendidos dentro de un año antes de la radicación de la petición de liquidación. *Los funcionarios y directores no tendrán derecho al beneficio de esta prioridad.* Esta prioridad *será en lugar de cualquier otra prioridad similar que cualquier otra ley pueda conceder en relación con salarios o remuneraciones de empleados.*" (Énfasis suplido.) Art. 40.390 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4039.

([6]) " 'Insolvencia' o 'insolvente' significa la condición en la cual un asegurador tiene un pasivo mayor que sus activos admitidos, todo ello de conformidad con las secs. 501 *et seq.* de este título." Art. 40.030(11) del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4003.

*insolvente.*([7]) *¿Quaere* si de facto para el 31 de diciembre de 1991 se encontraba en estado de insolvencia?

No se cumple el segundo criterio; esto es, que la transferencia se hubiera efectuado dentro de los cuatro (4) meses antes de que se incoara la liquidación. La transferencia fue el 17 de enero de 1992; la presentación exitosa de la liquidación ocurrió el 21 de diciembre.

Ahora bien, ¿tenía Lebrón Román, cuando se efectuó la

---

([7]) El Tribunal Superior, al decretar la insolvencia, incorporó lo siguiente

"CORPORACIÓN INSULAR DE SEGUROS
ESTADO DE SITUACIÓN FINANCIERA
AL 31 DE DICIEMBRE DE 1991

"ACTIVOS

| | |
|---|---|
| Bonos e inversiones a largo plazo | $43,139,051 |
| Acciones comunes | 13,782 |
| Bienes Raíces–Oficina matriz | 7,358,519 |
| Otras propiedades | 1,119,578 |
| Efectivo y depósitos bancarios | 4,104,860 |
| Otros activos de inversión | 34,210 |
| Balances de agencias por cobrar | 4,620,238 |
| Fondos retenidos y/o depositados con reaseguradores | 2,610,098 |
| Balances de reaseguros por cobrar | 7,874,034 |
| Contribuciones por cobrar | 188,957 |
| Equipo electrónico de procesamiento de datos | 174,711 |
| Intereses acumulados por cobrar de inversiones | 299,642 |
| Activos misceláneos | 1,540 |
| "TOTAL DE ACTIVOS | $71,539,280 |

"PASIVOS, CAPITAL Y SOBRANTE (DEFICIT)

| | |
|---|---|
| Reserva para pérdidas y gastos de ajustes (excluye impericia médica) | $30,048,441 |
| Reserva para pérdidas de impericia médica y gastos de ajustes | 37,080,000 |
| Primas no devengadas | 23,124,987 |
| Cuentas y gastos acumulados por pagar | 941,749 |
| Hipoteca sobre bien inmueble | 4,431,962 |
| Depósito de asegurados | 371,695 |
| Reaseguros por pagar por primas cedidas | 1,572,182 |
| "TOTAL DE PASIVOS | $97,571,016 |
| Capital pagado | 2,000,000 |
| Sobrante pagado y contribuido | 165,001 |
| Sobrante (déficit) sin asignar | (28,196,737) |
| Sobrante (déficit) para tenedores de pólizas | (26,031,736) |
| "TOTAL DE PASIVOS, CAPITAL Y SOBRANTE (DEFICIT) | $71,539,280" |

transacción, *suficiente* razón para *creer* que el asegurador *estaba insolvente* o *estaba a punto de quedar insolvente*?

Lebrón Román era Vicepresidente de Distribución, llevaba catorce (14) años trabajando en la Corporación Insular y mantenía relaciones satisfactorias con los otros altos ejecutivos, al extremo que se le adelantó el pago de su bono mientras que a los otros se les hizo posteriormente. El pago fue "ratificado el 17 de julio de 1992 y el 21 de diciembre de 1992 la Corporación fue declarada insolvente". *Estas circunstancias impedían la sentencia sumaria*. Véanse: *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 882 (1994); *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994). Hay controversia en cuanto a si Lebrón Román conocía o debió conocer sobre la precaria y potencial insolvencia de la Corporación Insular por razón de su posición como alto funcionario.

Al así decidirlo, tenemos presente el espíritu del Art. 40.250(4), dispositivo de que se anulará la preferencia cuando el acreedor que la "recibió era un funcionario, empleado o abogado u otra persona que de hecho estaba en una posición de influencia [con] el asegurador comparable a la de un funcionario, independientemente de que ocupara o no tal posición, o un accionista que tuviera directa o indirectamente más de cinco (5) por ciento de cualquier clase de acciones emitidas por el asegurador o cualquier otra firma, corporación, sociedad, o conjunto de personas con quienes el asegurador trataba a distancia". 26 L.P.R.A. sec. 4025(1)(b)(4). Ciertamente la cuestión debe dilucidarse en los méritos.

*Se dictará la correspondiente sentencia.*

Los Jueces Asociados Señores Rebollo López y Alonso Alonso concurrieron con el resultado sin opinión escrita.