EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juanita Rosario Ortiz<br><br>    Peticionaria<br><br>            v.<br><br>Nationwide Mutual Insurance Co.<br><br>    Recurrida | Certiorari<br><br>2003 TSPR 32<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2001-724


Fecha: 4 de marzo de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:
                    Hon. Néstor S. Aponte Hernández

Abogado de la Parte Peticionaria:
                    Lcdo. Gabriel I. Peñagaricano


Abogado de la Parte Recurrida:
                    Lcdo. Raúl E. García Sánchez


Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juanita Rosario Ortiz

    Peticionaria

       v.                          CC-2001-724      Certiorari

Nationwide Mutual Insurance Co.

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 4 de marzo de 2003.

I

El 5 de marzo de 2000, el automóvil conducido por la Sra. Juanita Rosario Cruz (en adelante, "Sra. Rosario Cruz" o "la demandante-peticionaria") fue impactado por el vehículo manejado por la Sra. Isel Aida Ortiz Mathews. El automóvil de ésta última, un Hyundai Elantra modelo de 1997, estaba registrado a nombre del Sr. Samuel Ortiz Chevres, un asegurado de la Nationwide Mutual Insurance Company (en adelante, "Nationwide" o "la demandada-recurrida"). Estos hechos ocurrieron mientras ambos autos se desplazaban por la carretera

estatal número 165, cerca de la cárcel federal en el Municipio de Guaynabo.

Luego del accidente, un representante autorizado de Nationwide se presentó en la residencia de la demandante-peticionaria, y le ofreció una compensación por los daños resultantes del accidente a cambio de que ésta renunciara a cualquier otra reclamación relacionada con el referido suceso. La Sra. Rosario Ortiz aceptó la susodicha oferta, firmando un primer documento de relevo el 29 de marzo de 2000, recibiendo un cheque por la cantidad de mil setecientos dólares ($1,700.00). Siete (7) días después de este evento, la demandante-peticionaria suscribió un segundo relevo, exactamente igual al anterior,[1] recibiendo

---

[1] En esencia, los documentos intitulados "Carta de Descargo Y Exoneración de Todas Reclamaciones" [sic], expresan el descargo de responsabilidad de la siguiente forma:

> [Por] la presente, por mi (nosotros) y por mis (nuestros) herederos, albaceas, administradores y cesionarios, total y a perpetuidad descargo (descargamos) y exonero (exoneramos) a la mencionada [Samuel Ortiz y Nationwide] y a todos aquellos directa o indirectamente responsables, de toda y todas reclamaciones y demandas, acciones y causas de acciones, daños, reclamaciones por lesiones, tanto conocidas como por conocer, incluyendo futuras consecuencias de las mismas, costas, pérdidas de servicio y compañía, relaciones conyugales, gastos y compensaciones como consecuencia de, o en algún modo surgidas de cualquier y todas lesiones personales

continúa...
        ...1 continuación

en esta ocasión un cheque por mil veinte dólares ($1,020.00).

No obstante la Sra. Rosario Ortiz haber firmado los referidos relevos, el 7 de agosto de 2000 presentó demanda por daños y perjuicios contra Nationwide, reclamando resarcimiento por una suma no menor de cincuenta mil dólares ($50,000.00). La Sra. Rosario Ortiz alegó haber sufrido "trauma en el cuello, espalda, hombros, cintura, rodilla izquierda y brazo derecho."[2]

Posteriormente, el 25 de agosto de 2000, Nationwide presentó *Moción Solicitando Sentencia Sumaria*, en la que argumentó que los daños reclamados por la demandante-peticionaria habían sido objeto de una transacción extrajudicial, por lo que aplicaba la doctrina de *res judicata*.[3] Oportunamente, la Sra. Rosario Ortiz presentó su *Oposición* a la susodicha *Moción*, en la que alegó que al

---

conocidas o por conocer y daños a la propiedad resultante o por resultar por un accidente ocurrido [el 5 de marzo de 2000]. *Véase* Apéndice del Recurso de Certiorari, a las págs. 19, 25.

[2] *Véase* Apéndice del Recurso de Certiorari, a la pág. 8.

[3] La demandante-peticionaria explicó que Nationwide alega que mediante el primer pago ésta quedó inmunizada de la totalidad de sus daños personales, y que mediante el segundo, se le indemnizaron los daños a su automóvil. La demandante-peticionaria está de acuerdo con lo segundo, mas no con lo primero. Esto debido a que, el mismo día de la firma del primer relevo, se le requirió también firmar una autorización para examen y copia de récords médicos. Por ende, alega que existe controversia, ya que no se sabe a ciencia cierta qué daños cubrió cada transacción. *Véase Petición de Certiorari*, a las págs. 6-8.

momento en que se le visitaba, la demandante se hallaba desprovista de asesoramiento y pensaba, **por que así se le hizo creer**, que la compensación que recibió cubría únicamente los daños a su vehículo y un anticipo para solventar los gastos médicos relacionados a los daños corporales que padecía como consecuencia del accidente.[4] Es decir, la demandante-peticionaria arguye que el ajustador incurrió en dolo al hacerle creer a ésta algo impreciso con tal de provocar que firmara el relevo. *Véase Oposición a Solicitud de Sentencia Sumaria*, Apéndice del Recurso de Certiorari, a la pág. 32.

Así las cosas, el 10 de octubre de 2000 el Tribunal de Primera Instancia (en adelante, "TPI") emitió Sentencia en la cual declaró con lugar la referida *Moción Solicitando Sentencia Sumaria*, desestimando con perjuicio la reclamación de la Sra. Rosario Ortiz. De este dictamen del TPI, la demandante-peticionaria apeló al Tribunal de Circuito de Apelaciones (en adelante, "TCA"), foro que confirmó el fallo apelado mediante Sentencia de 9 de agosto de 2001.[5]

---

[4] Además, la Sra. Rosario Ortiz alega que el ajustador le indicó que si no firmaba no se le entregaría el dinero para reparar el vehículo. También, que no se le permitió retener copia de los documentos que firmó. *Véase Oposición a Solicitud de Sentencia Sumaria,* Apéndice del Recurso, a la pág. 31.

[5] Véase Apéndice del Recurso de Certiorari, a la pág. 53.

Aún inconforme, el 14 de septiembre de 2001 la Sra. Rosario Ortiz presentó ante este Tribunal una *Petición de Certiorari*, en la que señaló la comisión de los siguientes errores:

> 1) Erraron el Tribunal de Instancia y el Tribunal de Circuito de Apelaciones al declarar que la demandante había transigido extrajudicialmente su reclamación, por lo que está impedida de reproducirla en el tribunal.
>
> 2) Erraron el Tribunal de Instancia y el Tribunal de Circuito de Apelaciones al desestimar la demanda por vía de sentencia sumaria, sin tener ante sí toda la verdad del caso y en presencia de una controversia de hecho "bona fide."

**Mediante Resolución del 2 de noviembre de 2001, le concedimos a la parte demandada-recurrida un término de veinte (20) días para que mostrara causa por la cual no debemos revocar la sentencia dictada por el TCA y devolver el caso al TPI, a los fines de que dicho foro celebre una vista evidenciaria para resolver la presente controversia.**

**El 27 de noviembre de 2001 la demandada-recurrida compareció mediante *Moción en Cumplimiento de Orden*, en la que expuso, *inter alia*, que en el presente caso no existen controversias de hechos y que, por ende, procedía que se dictase sentencia sumaria.**

**Contando con los argumentos de las partes, resolvemos.**

II

En reiteradas ocasiones, hemos resuelto que la sentencia sumaria es, si bien un instrumento valioso, un remedio extraordinario y discrecional que solamente debe

concederse cuando no hay una genuina controversia sobre hechos materiales y el tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. *Véase Audio Visual Language v. Sistema de Estacionamiento Natal*, 144 D.P.R. 563 (1997); *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994); *Consejo de Titulares Parkside v. MGIC Fin. Corp.,* 128 D.P.R. 538 (1991). El propósito de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia cuando de los documentos que se acompañaron a la solicitud surge que no existe disputa de algún hecho esencial, sino que lo que resta es aplicar el derecho. *Audio Visual Language*, *supra*, a la pág. 575.

En cuanto a la evaluación de la prueba pertinente, cualquier duda sobre la existencia de una controversia sobre los hechos materiales debe resolverse contra la parte promovente. *Id.* Así pues, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley." *Roig Comm. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990). De hecho, hemos expresado que la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos, a usarse solamente en casos claros. *Véase Metropolitana de Préstamos v. López de Victoria*, 141 D.P.R. 844 (1996); *Candal v. CT Radiology Office, Inc.*, 112 D.P.R. 227 (1982); *Moa v. E.L.A.*, 100 D.P.R. 573 (1972).

En atención a estos preceptos, también hemos establecido que "hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, por que difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones." *Soto v. Hotel Caribe Hilton*, *supra*, a la pág. 301. En esa ocasión, identificamos como incluidos en esta categoría aquellos casos que contienen elementos subjetivos; es decir, controversias en las que "el factor credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo."[6] *Id.*

---

[6] En *García López v. Méndez García*, 88 D.P.R. 363 (1963), caso en el que se sustenta *Soto*, *supra*, se alegó **fraude, simulación y engaño** para ocultar bienes de una sociedad legal de gananciales en un procedimiento de divorcio y liquidación (énfasis suplido). *Véase además Rodríguez Meléndez v. Supermercados Amigo, Inc.*, 126 D.P.R. 117, 135 (1990), en el cual se resuelve que:

> [el hostigamiento sexual] requiere un análisis **detenido y cuidadoso** de los hechos, pues están involucrados factores humanos relativos a **actitudes, conductas, móviles, sentimientos y otros, que difícilmente pueden precisarse a menos que se ventilen en un juicio plenario...Estas interrogantes no podían ser adjudicadas sumariamente**. Procede remitirlas a una

continúa...
... 6 continuación

Finalmente, aun de no proceder la moción, el tribunal puede dictar una orden especificando los hechos sobre los cuales no hay controversia y ordenar los procedimientos ulteriores que sean justos en el pleito. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. R. 36.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R.36.4.

Conforme a este estado de derecho, resolvemos la controversia de autos.

III

Las controversias fundamentales del caso ante nuestra consideración pueden resumirse en dos asuntos principales: 1) aclarar la intención real de la demandante-peticionaria al firmar el relevo; y 2) auscultar las supuestas actuaciones dolosas del ajustador de Nationwide que llevaron a la demandante-peticionaria a transigir.

Es decir, no hay duda de que la demandante-peticionaria firmó el referido relevo general e incondicional en las fechas antes mencionadas. Sin embargo, ¿bajo qué condiciones las suscribió? ¿Qué entendía ella sobre el verdadero alcance del relevo suscrito? ¿Qué aseveraciones le comunicó el ajustador que la llevaron a tal entendimiento y, en consecuencia, a firmar el relevo? Todas estas interrogantes son importantes ya que, de llegar

vista evidenciaria para su depuración
(énfasis en el original).

a probarse las alegaciones de la Sra. Rosario Ortiz, el consentimiento de ésta pudo haber estado viciado, haciendo del relevo de responsabilidad suscrito uno anulable por dolo. Art. 1216 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3404.[7]

En el caso de autos, la demandante-peticionaria alega que su consentimiento, al acordar el citado relevo, estuvo viciado por la conducta fraudulenta del ajustador de Nationwide. Específicamente, arguye que dicho individuo le hizo creer que la compensación que recibiría cubría únicamente los daños a su vehículo y un anticipo para solventar los gastos médicos relacionados a los daños corporales que padecía como consecuencia del accidente, no quedando transigida cualquier otra reclamación resultante del accidente en cuestión. También, que se le indicó que

---

[7] Sobre este particular, el Art. 1221 del Código Civil establece que *hay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho.* 31 L.P.R.A. § 3408 (énfasis suplido). Así pues, para determinar si ha habido dolo en una transacción contractual no se puede actuar en un vacío, por lo que es menester considerar, *inter alia*, la preparación académica del perjudicado, así como su condición social y económica y las relaciones y tipo de negocios en que se ocupa. *Véase Colón v. Promo Motor Imports*, 144 D.P.R. 659, 669 (1997); *Citibank v. Dependable Insurance Company*, 121 D.P.R. 503, 519 (1988); *Miranda Soto v. Mena Eró*, 109 D.P.R. 473, 478 (1980). Además, puede ocurrir que la conducta dolosa no se enmarque en un solo hecho, sino del conjunto y la evaluación de circunstancias y manejos engañosos. *Promo Motor Imports*, *supra*, a la pág. 669.

si no firmaba no se le entregaría el dinero para reparar su vehículo.[8]

Atendiendo estas alegaciones a la luz de elementos como la edad y poca educación de la demandante-recurrente,[9] así como el poder económico y conocimiento especializado de Nationwide, entendemos que existe una sustancial controversia de hechos en cuanto a si medió dolo en el perfeccionamiento del contrato de transacción de marras.

Ciertamente, al estudiar este caso, es inevitable evocar lo resuelto por este Tribunal hace casi cinco décadas en *Cruz v. A.F.F.*, 76 D.P.R. 312 (1954). En esa ocasión, se trataba de una campesina ignorante y sencilla que fue engañada por un ajustador de seguros inescrupuloso, quien la persuadió a firmar un acuerdo para transigir cualquier reclamación relacionada con la muerte de su hija, al indicarle que no obtendría más de mil dólares ($1,000.00) en compensación debido a que la niña era menor de edad y no era jefa de familia. En dicho caso, sin embargo, la señora tuvo el beneficio de una vista en los méritos, de la cual salió a relucir el engaño perpetrado por la aseguradora.[10] De no haberse ventilado sus alegaciones en una vista en su fondo, se hubiese

---

[8] *Véase* escolio 4, *supra*.

[9] En sus alegaciones, la demandante-peticionaria expresa que es una septuagenaria, que se desempeñó como costurera durante gran parte de su vida, y que es una analfabeta funcional. Además, que actualmente no trabaja, y sus ingresos no alcanzan los quinientos dólares ($500.00) mensuales. *Véase* Petición de Certiorari, a las págs. 3, 11.

impreso finalidad y presunción de corrección a un acto injusto.

No podemos arriesgarnos a que eso ocurra en este caso. Como hemos expresado anteriormente, **existe la necesidad de proteger al consumidor en casos de contratos como el de autos, que de ordinario son la parte más débil en este tipo de transacción.** *Colón v. Promo Motor Imports*, *supra*, a la pág. 672 (énfasis suplido).

Por ende, en ejercicio de nuestra discreción, concluimos que dada la complejidad inherente a una determinación que envuelve tantos aspectos subjetivos, como establecer intención y dirimir credibilidad,[11] no debemos decidir la presente controversia sumariamente. No existe en este caso la claridad fáctica necesaria para disponer de éste sin brindarle a la demandante-peticionaria su "día en corte" para que explique y pase prueba sobre sus alegaciones.

Se expide el auto de certiorari y se revoca el dictamen del TCA; se devuelve el caso al TPI para que continúe los procedimientos de conformidad con lo aquí dispuesto.

Se dictará sentencia de conformidad.

---

[10] Al igual que en el caso de autos, en *Cruz*, *supra*, se trataba de la firma de un relevo de responsabilidad.

[11] En cuanto a este aspecto, hemos resuelto que al decidir una sentencia sumaria, el tribunal no puede entrar en la credibilidad de los testigos. *Véase PFZ Properties, Inc. v. General Accident Insurance Company*, 136 D.P.R. 881 (1994); *López Rivera v. E.L.A.*, 127 D.P.R. 530 (1990).

BALTASAR CORRADA DEL RÍO
            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juanita Rosario Ortiz

    Peticionaria

       v.                    CC-2001-724      Certiorari

Nationwide Mutual Insurance Co.

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 4 de marzo de 2003.

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de certiorari y se revoca el dictamen del Tribunal de Circuito de Apelaciones; se devuelve el caso al Tribunal de Primera Instancia para que continúe los procedimientos de conformidad con lo aquí dispuesto.**

**Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.**

**Patricia Otón Olivieri**
**Secretaria del Tribunal Supremo**