Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO FEDERAL DEPOSIT INSURANCE, CORP. (FDIC) <br><br> Apelados <br><br> Vs. <br><br> JOSÉ ERIZARDO SERRANO QUINTERO, ET ALS. <br><br> Apelantes | KLAN202500037 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan <br><br> Sobre: Cobro de Dinero y Ejecución de Hipoteca <br><br> Caso Núm.: K CD2013-1945 (604) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2025.

Comparece ante nos el Sr. José E. Serrano Quintero ("señor Serrano Quintero" o "apelante") y nos solicita que revoquemos la *Sentencia* emitida el 11 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala de San Juan ("TPI").[1] Allí, se declaró Ha Lugar la acción de cobro de dinero contra el apelante.

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen apelado y **devolvemos** al TPI para que refiera el caso a mediación para procedimientos conforme a lo aquí dispuesto.

**-I-**

El **15 de agosto de 2013**, el Doral Bank ("Doral" o "banco") presentó una demanda contra el señor Serrano Quintero sobre cobro de dinero y ejecución de hipoteca.[2] Alegó que el 11 de julio de

---
[1] Notificada el 16 de diciembre de 2024.
[2] Apéndice 1 de la *Apelación,* págs. 1-40.

Número Identificador
SEN2025_____

2008 se otorgó un pagaré a favor de First Equity Mortgage Bankers Inc., o a su orden por la suma principal de $208,250.00 más intereses desde esa fecha hasta el pago total del principal a razón de 6.500% de interés anual sobre el balance adeudado. El pagaré también proveía que para pagar recargos por demora equivalentes a 4.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento. El pagaré proveía, además, una suma equivalente a $20,852.00 por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial. Al momento de radicarse la demanda, Doral era el tenedor de buena fe de dicho pagaré.[3] Así, Doral arguyó que el último pago que el apelante realizó fue el correspondiente al día 1 de febrero de 2013 y, consecuentemente, incurrió en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses según acordados. Por ello, reclamó que el señor Serrano Quintero le adeudaba la suma de $196,477.67 por concepto de principal, más intereses pactados al 6.500% anual desde el 1 de febrero de 2013.

El señor Serrano Quintero compareció mediante *Contestación a demanda y reconvención* el **7 de octubre de 2013**.[4] En síntesis, el alegó que, tanto él como su esposa, quedaron desempleados y que a causas de esto, sufrieron una merma significativa de ingresos. Además, adujo que la propiedad hipotecada era su residencia principal, por lo que le aplicaban varias normas federales. Arguyó que precisamente, dichas normativas federales impedían que Doral ejecutara la hipoteca en controversia ya que el banco incumplió con varias leyes y regulaciones federales aplicables a su hipoteca. Específicamente, en su *Reconvención* indicó que Doral conocía de la merma de ingresos y que en **abril de 2013** se comunicó con el banco

---

[3] El mismo se adquirió por valor recibido y por endoso en el curso ordinario de sus negocios.
[4] Apéndice 2 de la *Apelación,* págs. 41-81.

para orientarse sobre alternativas de reducción de pago mensual de hipoteca. Además, alegó que mediante carta del **1 de julio de 2013**, Doral rechazó su solicitud de reducción de pago mensual. Ante este cuadro, Doral le ofreció un préstamo sujeto a la actualización de todos los documentos. No obstante, el apelante sostuvo que Doral actuó de manera desleal y contraria a las leyes federales que rigen los procedimientos específicos a su préstamo hipotecario. Por todo esto, le solicitó al TPI la desestimación de la demanda incoada en su contra, que declarara con lugar su reconvención y con ello, la modificación o extinción del pagaré hipotecario o, en la alternativa, que amoldara el pagaré hipotecario a las nuevas circunstancias. De igual forma, solicitó varias sumas de dinero para sí y su esposa correspondiente a los daños ocasionados por la violación a la buena fe contractual y de fiducia por el manejo culposo y/o negligente del préstamo hipotecario, por el tiempo que ambos invirtieron en la búsqueda de soluciones relacionadas a la hipoteca en controversia, por los daños y angustias mentales producidas por las actuaciones negligentes y/o culposas de Doral y, finalmente, el pago de gastos, costas y honorarios de abogado.

En la misma fecha que el señor Serrano Quintero presentó su *Contestación a demanda y reconvención,* también presentó una *Moción en Solicitud de Orden a Doral Bank.*[5] En apretada síntesis, solicitó que el TPI ordenara a Doral producir evidencia que acreditara su cumplimiento con las leyes, normas y regulaciones federales aplicables al procedimiento de epígrafe y a la hipoteca en controversia. De igual modo, solicitó que se le ordenara al banco a evidenciar que el pagaré le fue endosado.

Tras varios trámites procesales, Doral compareció mediante *Réplica a reconvención* el **28 de enero de 2014**.[6] En esencia, negó

---

[5] Apéndice 3 de la *Apelación,* págs. 82-89.
[6] Apéndice 8 de la *Apelación,* págs. 104-110.

las alegaciones en su contra en cuanto al incumplimiento con las leyes y normas federales. De igual forma, negó haber actuado de mala fe y aseguró haber actuado conforme a derecho. De otro lado, Doral arguyó que el señor Serrano Quintero estaba impedido de presentar la reconvención ya que fue él mismo quien incumplió con su obligación de pago. Por lo que, cualquier daño reclamado fue autoinfligido.

El **19 de mayo de 2015**, Doral compareció sustituida por el *Federal Deposit Insurance Corporation* ("FDIC") mediante *Moción solicitando sustitución de parte y paralización de los procedimientos*.[7] En síntesis, informó que el 27 de febrero de 2015, la Oficina del Comisionado de Instituciones Financieras cerró las operaciones de Doral y nombró al FDIC como síndico del banco demandante. Así las cosas, el FDIC heredó todos los derechos, títulos, poderes y privilegios de Doral y por ello tenía autorización para conducir todos los negocios y llevar a cabo todas las funciones de la institución a nombre de Doral. No obstante, el FDIC aclaró que su comparecencia se limitaba a la reconvención incoada contra Doral, la cual asumía. Por todo esto, el FDIC solicitó la sustitución de parte exclusivamente en la reconvención incoada por el señor Serrano Quintero y la paralización de los procedimientos conforme a 12 USC sec. 1821 (d)(2)(A)(I).

Así las cosas, el TPI emitió una *Sentencia* el **9 de julio de 2015**.[8] En ella, ordenó la sustitución del FDIC en el lugar de Doral como la parte real con interés en el asunto de epígrafe. De igual forma, ordenó la paralización de los procedimientos por un periodo de noventa días conforme a los dispuesto en 12 USC sec. 1821 (d)(2)(A)(I).

---

[7] Apéndice 11 de la *Apelación*, págs. 153-156.
[8] Apéndice 12 de la *Apelación*, págs. 157-160.

Tras varios trámites innecesarios pormenorizar, el TPI emitió una *Sentencia* el **12 de enero de 2016**.[9] En esencia, el 2 de septiembre de 2015, el FDIC presentó una *Comparecencia especial de la FDIC como síndico de Doral para informar del traslado del caso al Tribunal Federal.* El FDIC solicitó el traslado del caso de epígrafe al Tribunal de Distrito Federal para Puerto Rico conforme al 28 USC sec. 1446 (d). De manera que, el TPI quedó privado de jurisdicción para continuar con el trámite del caso. Por lo cual, dictó sentencia decretando el archivo administrativo sin perjuicio del caso. Así, se reservó jurisdicción para ordenar la reapertura del caso a solicitud de parte interesada en el supuesto de que el Tribunal Federal denegara el traslado.

Tiempo más tarde, el **16 de agosto de 2017**, el Banco Popular de Puerto Rico ("BPPR", "banco" o "apelado") compareció mediante *Moción solicitando continuación de los procedimientos* .[10] El banco compareció como el actual tenedor del pagaré en controversia e informó que el 15 de junio de 2017, el Tribunal Federal desestimó con perjuicio la reconvención presentada por el señor Serrano Quintero. Que, conforme a la *Sentencia* emitida el 12 de enero de 2016, el BPPR solicitó la reapertura del caso para la continuación de los procedimientos de ejecución de hipoteca.

Varios meses después, el **8 de abril de 2018**, el BPPR presentó una *Moción en cumplimiento de orden y solicitando mediación compulsoria.*[11] En apretada síntesis, informó que el TPI le solicitó mediante *Orden* del 27 de marzo de 2019,[12] que mostrara causa por la cual no debía archivar el caso por inactividad. El banco explicó que en el año 2017, tras el paso del Huracán María, la institución financiera le solicitó al TPI extender la paralización de

---

[9] Apéndice 13 de la *Apelación*, págs. 161-164.
[10] Apéndice 14 de la *Apelación*, págs. 165-176.
[11] Apéndice 15 de la *Apelación*, págs. 177-181.
[12] Notificada el 29 de marzo de 2019.

todos los procedimientos en cobro de dinero y ejecución de hipotecas residenciales. Esto incluyó al caso de epígrafe. A esos fines, el BPPR no solicitó la continuación de los procedimientos. Así las cosas, solicitó que la causa de acción de epígrafe no fuese desestimada y que el TPI refiriera el caso a mediación conforme a lo dispuesto por la Ley Núm. 184 del 17 de agosto de 2012, *infra* (Ley Núm. 184-2012).

Tras varios trámites procesales, el Centro de Mediación y Conflicto ("CMC") emitió una *Moción informativa devolviendo el caso* el **10 de junio de 2019**.[13] El CMC expresó que el 10 de junio de 2019, las partes se reunieron y que a raíz de dicha reunión surgió información que imposibilitaba que el caso fuera adecuado para mediación. El CMC explicó que existía la necesidad de que el TPI atendiera aspectos procesales jurídicos o trámites legales. Específicamente, todavía el FDIC figuraba como parte del pleito, por lo que hacía falta una **sustitución de parte**. El CMC puntualizó que aunque un caso no fuese mediable en un momento dado, **"no impide que luego de atenderse las circunstancias que no permitan nuestra intervención, el mismo vuelva a ser referido al [CMC]"**.

Ante este cuadro, el señor Serrano Quintero presentó una *Moción en solicitud de orden* el **9 de octubre de 2019**.[14] En esencia, planteó que de acuerdo con el Artículo 3 de la Ley Núm. 184-2012, *infra*, el TPI tiene como deber citar a las partes a una vista o acto de mediación compulsoria con el fin de informar al deudor hipotecario todas las alternativas disponibles para evitar la privación del inmueble. De igual forma, el apelante indicó que existen leyes federales que persiguen el mismo objetivo que la legislación local y que la jurisprudencia local reitera este principio. Por ello, le solicitó

---

[13] Apéndice 16 de la *Apelación*, págs. 182-184.
[14] Apéndice 17 de la *Apelación*, págs. 185-189.

al TPI que le ordenara al BPPR a cumplir con el Artículo 3 de la mencionada ley al igual que con otras leyes federales.

El **26 de septiembre de 2019**, el BPPR compareció mediante *Moción informativa*.[15] En esta, le solicitó al TPI autorización para continuar los procedimientos de ejecución de hipoteca y solicitar Sentencia Sumaria.

Luego de que los procedimientos ante el tribunal se vieran interrumpidos por la emergencia global provocada por el COVID-19, el **25 de marzo de 2024** el señor Serrano Quintero presentó *Moción para mantener en suspenso la Resolución de la Moción de Sentencia Sumaria*.[16] En esencia, le solicitó al TPI que declarara *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por el BPPR y así, ordenara la inspección ocular del pagaré hipotecario, que abra el descubrimiento de prueba para enmendar sus alegaciones en la *Contestación a demanda*, entre otros.[17]

Luego de varios trámites procesales, el **11 de diciembre de 2024**, el TPI emitió *Sentencia*.[18] Mediante esta, se dispuso del caso mediante el mecanismo sumario y declaró *Ha lugar* la *Moción de Sentencia Sumaria* de BPPR, luego de examinar el expediente y sus documentos. En consecuencia, el TPI condenó al apelante la suma de $196,447.67 al 1 de marzo de 2013, más los intereses devengados sobre dicha suma, intereses legales acumulados, costas, gastos del pleito y cualquier otra suma que se haga en virtud de la escritura de la hipoteca.

Inconforme, el señor Serrano Quintero acude ante nos mediante recurso de apelación y nos señala la comisión de los siguientes errores:

> ERRÓ EL *FORO A QUO*, AL CONCEDER SENTENCIA SUMARIA CUANDO NO TENÍA JURISDICCIÓN PARA ELLO

---

[15] Apéndice 18 de la *Apelación*, págs. 190-191.
[16] Apéndice 21 de la *Apelación*, págs. 197-208.
[17] Cabe señalar que ninguna de las partes adjuntó la Moción de Sentencia Sumaria del BPPR como en sus respectivos apéndices.
[18] Apéndice 26 de la *Apelación*, págs. 249-254.

PUESTO QUE EL CASO SE REFIRIÓ NUEVAMENTE A LA ATENCIÓN DEL TRIBUNAL POR CONTROVERSIAS, NO HABIENDOSE CULMINADA LA MISMA.

ERRÓ EL *FORO A QUO*, AL CONCEDER SENTENCIA SUMARIA CUANDO HAY CONTROVERSIAS SOBRE EL DESCUBRIMIENTO DE PRUEBA PENDIENTES DE ATENCIÓN ANTE EL TPI.

Oportunamente, el BPPR compareció mediante escrito en oposición. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**-II-**

**-A-**

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria,[19] cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[20] Se considera un hecho material esencial *"aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable".*[21] Por lo tanto, procederá dictar una sentencia sumaria:

> *[S]i las alegaciones, **deposiciones**, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que[,] como cuestión de derecho[,] el tribunal debe dictar sentencia sumaria a favor de la parte promovente.*[22]

Es decir, este mecanismo podrá ser utilizado en situaciones en las que la celebración de una vista o del juicio en su fondo resultare innecesaria, debido a que el tribunal tiene ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y solo le resta aplicar el derecho.[23] De

---

[19] Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.
[20] *Bobé v. UBS Financial Services*, 198 DPR 6, 19-20 (2017).
[21] *SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011). *Citas omitidas.*
[22] 32 LPRA Ap. V, R. 36.3(e). *Énfasis nuestro.*
[23] *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

manera, que un asunto no debe ser resuelto por la vía sumaria cuando:

> *(1) existen hechos materiales y esenciales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede.*[24]

La precitada Regla establece los requisitos de forma que debe satisfacer toda solicitud de sentencia sumaria.[25] El inciso (a) de la Regla 36.3 de Procedimiento Civil dispone que la moción de la parte promovente deberá contener:

> *1) Una exposición breve de las alegaciones de las partes;*
> *2) los asuntos litigiosos o en controversia;*
> *3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
> *4) una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
> *5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
> *6) el remedio que debe ser concedido.*[26]

Asimismo, presentada una moción de sentencia sumaria, la parte promovida no deberá cruzarse de brazos ni descansar exclusivamente en meras afirmaciones o en las aseveraciones contenidas en sus alegaciones.[27] Es preciso que la parte promovida formule —con prueba adecuada en derecho— una posición sustentada con contradeclaraciones juradas y contradocumentos que refuten los hechos presentados por el promovente.[28] Por consiguiente, cualquier duda que plantee sobre la existencia de hechos materiales en controversia no será suficiente para derrotar la procedencia de la solicitud.[29] Es decir, *"[t]iene que ser una duda*

---

[24] *SLG Szendrey-Ramos v. Consejo de Titulares, supra*, a la pág. 167. *Citas omitidas.*

[25] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 431 (2013).

[26] 32 LPRA Ap. V, R. 36.3 (a).

[27] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 785 (2016).

[28] *Ramos Pérez v. Univisión*, 178 DPR 200, 214-215 (2010).

[29] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26 (2014).

*que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes.*"[30] Después de todo, *"[l]a etapa procesal para presentar prueba que controvierta los hechos propuestos por una parte en su Moción de Sentencia Sumaria no es en el juicio, sino al momento de presentar una Oposición a la Moción de Sentencia Sumaria, según lo exige la Regla 36 de Procedimiento Civil".*[31]

En ese sentido, la parte promovida también tiene la obligación de cumplir con las exigencias enunciadas en las cláusulas (1), (2) y (3) del inciso (a) de la Regla 36.3 de Procedimiento Civil.[32] Le corresponde citar con especificidad cada uno de los párrafos, según enumerados en la solicitud de sentencia sumaria, que entiende se encuentran en controversia, al igual aquellos que no.[33] Dicha tarea deberá ser realizada de forma tan detallada y específica como lo haya hecho la parte promovente y haciendo referencia a la prueba admisible en la cual se sostiene la impugnación, con cita a la página o sección pertinente.[34]

Por otro lado, y pertinente al presente caso, nuestro Tribunal Supremo ha expresado que *"no es aconsejable utilizar el mecanismo de procesal de sentencia sumaria en casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial."*[35]

Asimismo, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[36] Al tratarse de una revisión de *novo*, debemos ceñirnos a los mismos criterios y reglas

---

[30] *Ramos Pérez v. Univisión, supra,* a la pág. 214.
[31] *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 122 (2015).
[32] 32 LPRA Ap. V, R. 36.3 (b)(1).
[33] *SLG Zapata-Rivera v. JF Montalvo, supra,* a la pág. 432.
[34] *Íd.; Burgos López et al. v. Condado Plaza,* 193 DPR 1, 17 (2015).
[35] *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994).
[36] *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 118.

que nuestro ordenamiento les impone a los foros de primera instancia, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en la Regla 36 de Procedimi*ento* Civil, *supra.*[37] A tenor con lo expuesto, el Tribunal Supremo ha pautado lo siguiente:

> *[E]l Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. [...]*
>
> *[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.*[38]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia ni la adjudicación de hechos materiales en controversia.[39]

**-B-**

Con el fin de proteger la residencia principal de los deudores hipotecarios y proveerles un mecanismo para evitar y reducir su ejecución, la Asamblea Legislativa aprobó la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal,* Ley Núm. 184-2012.[40] Dicho estatuto *"tiene el propósito de proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica".*[41] En particular, provee para la celebración de una vista de mediación donde el deudor podrá recibir información relativa a *"los remedios que tiene disponibles para evitar la pérdida de su*

---

[37] *Íd.*
[38] *Íd.* a las págs.,118-119.
[39] *Íd. Énfasis nuestro.*
[40] Ley Núm. 184 de 17 de agosto de 2012, según enmendada, conocida como *Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, 32 LPRA sec. 2881 *et seq.*
[41] *Banco Santander v. Correa García*, 196 DPR 452, 461 (2016).

*residencia principal y, a su vez, le provee la oportunidad de sentarse*

*a negociar con su acreedor".*[42]

Reconociendo la obligatoriedad del proceso de mediación compulsoria previo a la ejecución de la propiedad principal de un deudor hipotecario, el Tribunal Supremo de Puerto Rico estableció:

> –[d]espués de presentada la contestación a la demanda– el acto de citar para una vista de mediación es un requisito jurisdiccional que el tribunal debe cumplir en los casos en los que un acreedor solicite la ejecución de la vivienda principal de un deudor, **salvo en aquellos casos en que el deudor se encuentre en rebeldía o cuando el tribunal haya eliminado sus alegaciones. Estas son las únicas excepciones que estableció el legislador**. Por lo tanto, si el tribunal incumple con el requisito de ordenar la celebración de tal vista, no tendrá jurisdicción para proceder a dictar sentencia ni podrá ordenar la venta judicial del inmueble. En consecuencia, **las sentencias que el tribunal dicte y las ventas judiciales que ordene sin haber señalado una vista de mediación serán nulas y no tendrán efecto legal alguno**.[43]

Ahora bien, según lo dispuesto en el Art. 3 de la Ley 184-2012, la extensión de la de mediación y su resultado dependerá del comportamiento de las partes.[44] Es por ello, que el tribunal podrá continuar con el proceso judicial cuando: **(1)** el acreedor acudió a la vista de mediación pero el deudor no se presentó; **(2)** las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo; o, **(3)** el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación.[45]

Sobre el requisito de <u>buena fe</u> en los procesos de mediación el Tribunal Supremo expresó:

> [d]e conformidad con el propósito de la Ley 184, el requisito de buena fe en la mediación en los procesos de ejecuciones de hipoteca de una vivienda principal debe ser definido en armonía con el requisito compulsorio y jurisdiccional. **En primer lugar**, las partes deben ir preparadas para negociar y llegar a un acuerdo, de ser posible. **En segundo lugar**, las partes deben llevar a la vista o al acto de mediación toda la documentación que requiere el proceso de mediación y cualquier otra documentación necesaria. **En tercer lugar**, el representante del acreedor hipotecario debe tener autoridad para llegar a un acuerdo. **Finalmente**, los acreedores deben

---

[42] *Id.;* Véase, además, *Exposición de Motivos* y Artículo 2(b) de la Ley 184-2012, 32 LPRA sec. 2881(b).

[43] *Banco Santander v. Correa García, supra,* pág. 472. Véase, además, Art. 3 de la Ley Núm. 184-2012, 32 LPRA sec. 2882. (Énfasis suplido).

[44] *Id.*, pág. 473; 32 LPRA sec. 2882.

[45] *Banco Santander v. Correa García, supra*, págs. 473-474.; 32 LPRA sec. 2882.

proveer a los deudores todas las alternativas disponibles en el mercado, tales como la modificación del préstamo, un análisis en virtud de los programas federales *Home Affordable Modification Program* (HAMP) y *Home Affordable Refinance Program* (HARP), entre otras. [...].[46]

**-III-**

En síntesis, el señor Serrano Quintero plantea que no se podía emitir la Sentencia Sumaria apelada ya que el BPPR no cumplió cabalmente con la Ley Núm. 184-2012, *supra*, ya que el proceso de mediación no se continuó debido a que el TPI debía realizar una sustitución de parte para que CMC pudiera atender el asunto. Le asiste la razón. Veamos.

Según surge del expediente ante nuestra consideración, el CMC emitió una *Moción informativa* mediante la cual devolvió el caso al TPI por entender que en este caso existía trámites legales que todavía estaban pendientes de resolver; en específico: **sustitución de parte**. Es decir, para ese entonces el BPPR no había solicitado la sustitución de la FDIC como parte del pleito. No empece a esa situación, el CMC enfatizó que aun cuando el caso no fuese mediable en ese momento, ello no impedía que tras atenderse las circunstancias antes descritas el mismo le fuese devuelto. A esos efectos, el señor Serrano Quintero radicó su *Moción en solicitud de orden* para que el TPI le ordenara al BPPR continuar con el proceso de mediación conforme la Ley Núm. 184-2012, *supra*. Sin embargo, el TPI nunca atendió dicha *Moción* y procedió a disponer del caso por la vía sumaria.

Conforme a la Ley Núm. 184-2012 y su jurisprudencia interpretativa, el proceso de mediación compulsoria previo a la ejecución de la propiedad principal de un deudor hipotecario es un requisito jurisdiccional.[47] Esto es, siempre y cuando el deudor no se encuentre en rebeldía o que el tribunal no haya eliminado sus

---

[46] *Scotiabank de Puerto Rico v. Rosario Ramos*, 205 DPR 537, 557 – 558 (2020).
[47] *Banco Santander v. Correa García, supra*.

alegaciones. Nuestro máximo foro destacó que en aquellos casos donde el tribunal incumpla con el requisito de ordenar la celebración de la vista de mediación, este no tendrá jurisdicción para proceder a dictar sentencia ni podrá ordenar la venta judicial del inmueble. De manera que, las sentencias dictadas y las ventas judiciales ordenadas bajo estas circunstancias serán nulas y no tendrán efecto legal alguno.[48]

Recordemos que la extensión de la de mediación y su resultado dependerá del comportamiento de las partes.[49] Es por eso que el tribunal podrá continuar con el proceso judicial cuando: (1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó; (2) las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo; o, (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación.[50]

Conforme con estos principios, concluimos que el TPI erró al dictar sentencia sumaria y ordenar la venta judicial del inmueble. El TPI tuvo ante sí la oportunidad de autorizar la sustitución de parte que privaba al CMC de su jurisdicción y de devolver el caso para la celebración de la vista de mediación. Sin embargo, el TPI no atendió la solicitud del apelante y dispuso del caso sumariamente. Esto es completamente opuesto a los preceptos establecidos en la Ley Núm. 184-2012, *supra*, y su jurisprudencia interpretativa.'

En ese sentido, entendemos meritoria la revocación de la sentencia apelada y la devolución del caso al TPI para que este autorice la sustitución de parte y ordene la devolución del caso al CMC.

---

[48] *Banco Santander v. Correa García, supra.* Véase, 32 LPRA sec. 2882.
[49] *Id.*, pág. 473; 32 LPRA sec. 2882.
[50] *Banco Santander v. Correa García, supra*, págs. 473-474.; 32 LPRA sec. 2882.

**-IV-**

Por lo anterior **revocamos** el dictamen apelado y **devolvemos** al TPI para que refiera el caso a mediación para procedimientos conforme a lo aquí dispuesto.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones